IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**MARY LANDON BENTON**

          **Petitioner,**

v.                                            **Criminal No. 2:21-cr-33(1)**

**UNITED STATES OF AMERICA,**

          **Respondent.**

**MEMORANDUM OPINION AND ORDER**

Before the Court is Mary Landon Benton's ("Petitioner") *pro se* Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A) and the amendments to § 3582(c)(1)(A) imposed by the Formerly Incarcerated Reenter Society Transformed Safely Transitioning Every Person Act ("FIRST STEP Act"), Pet'r's Pro Se Mot., ECF No. 167, and Petitioner's Supplemental Motion for Compassionate Release pursuant to the same ("Motion"). Pet'r's Suppl. Mot., ECF No. 170. The Government opposed the Motion. Gov't Resp. Opp'n Pet'r's Suppl. Mot., ECF No. 174 ("Resp. Opp'n"). Petitioner replied. Pet'r's Reply Gov't Resp. Opp'n, ECF No. 184 ("Pet'r's Reply"). This matter is now ripe for judicial determination. For the reasons below, Petitioner's Motion is **DENIED**, and Petitioner's *pro se* Motion is **DISMISSED** as moot.

**I.    FACTUAL AND PROCEDURAL HISTORY**

On April 8, 2021, Petitioner was charged in a nine-count Indictment in the Eastern District of Virginia, Norfolk Division with Conspiracy to Commit Fraud in Connection with Major Disaster Benefits, in violation of 18 U.S.C. § 371 (Count 1); Fraud in Connection with Major Disaster Benefits, in violation of 18 U.S.C. 1040(a)(2) (Counts 2–4); and Mail Fraud, in violation

of 18 U.S.C. §§ 1341 and 1342 (Counts 6–8). On June 24, 2021, Petitioner pled guilty to Count Seven, Mail Fraud. Plea Agreement Hr'g, ECF No. 62. On November 2, 2021, the Court sentenced Petitioner to a term of seventy-eight (78) months in prison. J., ECF No. 111.

On December 19, 2022, Petitioner filed her *pro se* Motion for Compassionate Release and later filed the instant Motion for Compassionate Release through counsel on January 1, 2023. ECF Nos. 167, 170. On February 3, 2023, the United States Probation Office filed a memorandum recommending that the Court deny Petitioner's request for compassionate release. ECF No. 172. On March 3, 2023, the Government responded in opposition to the Motion. Resp. Opp'n. On March 15, 2023, Petitioner replied. ECF No. 180. Petitioner filed an amended reply on March 22, 2023. Pet'r's Reply.

## II. LEGAL STANDARD

### A. The Threshold Requirement

A petitioner may bring a motion to modify their sentence after they have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [petitioner]'s behalf or the lapse of 30 days from the receipt of such a request by the warden of the [petitioner]'s facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Accordingly, a petitioner seeking compassionate release has two options after requesting that the Bureau of Prisons ("BOP") bring a motion on their behalf: (1) exhaust their administrative remedies; or (2) wait 30 days from the date of their initial request to the BOP. *United States v. Muhammad*, 16 F.4th 126, 131 (4th Cir. 2021) ("[Section] 3582(c)(1)(A) outlines two routes – one of which does not require exhaustion of administrative remedies."). In other words, a petitioner may satisfy the threshold requirement if they "request[] the Bureau of Prisons to bring a motion on their behalf and *either* fully exhaust[] all administrative rights to appeal the Bureau's decision *or* wait[] 30 days from the

2

date of their initial request to file a motion in the district court." *Id.* Thus, a petitioner who made a request to the BOP at least 30 days prior may seek compassionate release with the district court whether the BOP has ruled on the request or not. *Id.* (holding petitioner satisfied the threshold requirement by filing his compassionate release motion 149 days after submitting a request to the warden, which the warden denied) (citing *United States v. Garrett*, 15 F.4th 335, 338 (5th Cir. 2021); *United States v. Harris*, 973 F.3d 170, 171 (3d Cir. 2020); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020)). Moreover, the threshold requirement is a non-jurisdictional claim-processing rule, and thus may be waived or forfeited if not timely raised. *Id.* at 129–30 (collecting cases from sister circuits holding the same).

**B.    The Compassionate Release Standard**

As amended by the FIRST STEP Act, a court may modify a term of imprisonment by motion of the petitioner after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). "Extraordinary and compelling reasons" was previously defined by the United States Sentencing Commission ("Sentencing Commission") in United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13, Application Note 1. Before the FIRST STEP Act was passed, the Sentencing Commission provided that a sentence may be modified because of the petitioner's medical condition, age, or family circumstances and further defined the limits under which a sentence reduction may be given under those justifications. U.S.S.G. § 1B1.13, n. 1 (A)–(C). The Sentencing Commission also provided a "catch-all provision" that allowed for a sentence modification upon a showing of "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* at n. 1 (D). Use of the "catch-all provision" prior to the FIRST STEP Act was severely restricted because it required

3

approval from the BOP before an individual could petition the district court for relief. *Id.*

U.S.S.G. § 1B1.13 is now outdated, however, following the passage of the FIRST STEP Act, which allows individuals to petition the district court directly without clearance from the BOP. As such, U.S.S.G. § 1B1.13 is merely advisory and does not bind the Court's application of § 3582(c)(1)(A). *United States v. McCoy*, 981 F.3d 271, 283 (4th Cir. 2020); *see also United States v. Lisi*, 440 F. Supp. 3d 246, 250 (S.D.N.Y. 2020), *reconsideration denied*, No. 15 CR. 457 (KPF), 2020 WL 1331955 (S.D.N.Y. Mar. 23, 2020) ("[T]he Court may independently evaluate whether [the petitioner] has raised an extraordinary and compelling reason for compassionate release . . . [but § 1B1.13's policy statement] remain[s] as helpful guidance to courts . . . ."); *United States v. Fox*, No. 2:14-cr-03-DBH, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("[T]he Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive."). A petitioner's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). In sum, the Court may consider a combination of factors, including but not limited to those listed in U.S.S.G. § 1B1.13, in evaluating a petitioner's request for a sentence modification under 18 U.S.C. § 3582(c)(1)(A)(i).

### III. DISCUSSION

**A. The Threshold Requirement**

The Court finds that Petitioner satisfied the threshold requirement. The Government does not contest such. *See* Resp. Opp'n. In her *pro se* Motion, Petitioner purports to have filed a Motion for Compassionate Release on October 28, 2022. *See* Pet'r's Pro Se Mot. at 1. Petitioner also attached a letter from the Warden denying a request for compassionate release on November 3, 2022. *See* Pet'r's Pro Se Mot. at Attach. 1, ECF 167-1. On December 9, 2022, Petitioner submitted

4

a Request for Reconsideration of Compassionate Release to the Warden. Pet'r's Suppl. Mot. at Ex. 1, ECF 170-1 at 2. On December 29, 2022, the Warden denied Petitioner's reconsideration request. *See id.*, ECF 170-1 at 1–2. Although the Court has no record of an October 28, 2022 Motion for Compassionate Release, the Warden's November 3, 2022 letter and the subsequent request and denial of reconsideration satisfy the Court that Petitioner filed her original request more than 30 days prior to her *pro se* Motion and Supplemental Motion.

**B.     Petitioner's Compassionate Release Request**

The Court now turns to whether Petitioner has set forth extraordinary and compelling reasons to modify her sentence. Petitioner argues the lingering effects of COVID-19 at her BOP facility, including its threat to Petitioner's health and its impact on her confinement conditions, constitute extraordinary and compelling circumstances warranting compassionate release. Pet'r's Suppl. Mot. at 5–13. Petitioner further argues her familial circumstances are extraordinary and compelling. *Id.* at 13–15. Finally, Petitioner argues the sentencing factors under 18 U.S.C. § 3553(a), including consideration of her rehabilitative efforts, support compassionate release. *Id.* Petitioner asks the Court to resentence her to time served with a four-year term of supervised release. *Id.* at 16.

The Government contends Petitioner does not demonstrate any extraordinary or compelling reasons for compassionate release related to COVID-19 or family circumstances. *See* Resp. Opp'n at 6–20. The Government also argues the § 3553(a) factors weigh against compassionate release. *See id.* at 20–25.

**i.     Impact of COVID-19 on Petitioner's health and conditions of confinement**

Petitioner argues she has underlying health conditions, including obesity, asthma, and depression, which make the possibility of contracting COVID-19 especially threatening to her

5

health. Pet'r's Suppl. Mot. at 5–8. She also argues the conditions at her BOP facility, Federal Prison Camp ("FPC") Alderson, heighten her risk of contracting COVID-19. *See id.* at 8–11. She claims there are infected individuals at FPC Alderson, prisons are opportune environments for contagious illnesses to spread, and there is no doctor on staff at FPC Alderson, which has delayed her from obtaining preventative medical care. *See id.* Further, Petitioner contends the preventative measures taken by FPC Alderson to reduce COVID-19 infections—including its "Level 2" status and limited programming and visits at the time of filing—increased the punitive nature of her sentence beyond what the Court could have contemplated at the time of sentencing. *See id.* at 12–13; Pet'r's Reply at 1. She argues these circumstances are extraordinary and compelling, and she would be safer from COVID-19 at home. *See* Pet'r's Suppl. Mot. at 5–13; Pet'r's Reply at 2–3.

The Government counters that FPC Alderson has low numbers of infected individuals, and the BOP has taken steps to reduce the risk of COVID-19 infection to prisoners, including through vaccination, testing, wearing personal protection equipment, daily cleaning, and medical isolation where necessary. Resp. Opp'n at 4–6. Although the Government acknowledges Petitioner's obesity and depression may increase the risk of severe illness from infection, it contends Petitioner has not demonstrated a "particularized susceptibility" to COVID-19 because she is vaccinated against the virus and was twice previously infected with COVID-19 before her incarceration and vaccination. *See id.* at 6–7, 10 (quoting *United States v. Adamson*, 831 F. App'x 82, 83 (4th Cir. 2020)). The Government further counters that Petitioner provides no evidence her asthma is severe enough to place her at a heightened risk of COVID-19, and shows she is receiving treatment for asthma at FPC Alderson. *See id.* at 11, Ex. D at 3. The Government also argues Petitioner's back condition does not place her at an increased risk of severe illness from COVID-19. *Id.* at 11.

"To establish existence of 'extraordinary and compelling' reasons for compassionate

6

release because of COVID-19, [Petitioner] must show 'both a particularized susceptibility to the disease and a particularized risk of contracting the disease at [her] prison facility.'" *United States v. Smith*, No. 3:15-cr-101, 2021 WL 3641463, at *3 (E.D. Va. Aug. 17, 2020) (quoting *United States v. Feiling*, 453 F. Supp. 3d 832, 840 (E.D. Va. 2020)); *see United states v. White*, 613 F. Supp. 3d, 967 n.2 (E.D. Va. 2020). Despite Petitioner's underlying health conditions, she does not satisfy this standard.

      a.      Particularized susceptibility to COVID-19

Petitioner fails to demonstrate a particularized susceptibility to COVID-19. First, Petitioner is fully vaccinated against COVID-19, which mitigates her risk of contracting the virus and suffering severe health effects if infected. *See Smith*, 2021 WL 3641463, at *3.[1] The fact that Petitioner previously contracted and recovered from COVID-19 prior to vaccination further shows her limited risk of severe illness from the virus. *See United States v. Drayton*, No. 1:09-cr-76-2, 2021 WL 4267306, at *8 (E.D. Va. Sept. 20, 2021) (finding the defendant's hypertension and obesity "only suggests a particularized susceptibility . . . and only if Defendant's vaccination and apparent full recovery from COVID-19 are ignored"); *United States v. Jones*, No. 3:13-cr-13, 2021 WL 3082113, at *2 (E.D. Va. July 20, 2021) ("[T]he fact that a defendant has established a higher susceptibility to COVID-19 does not resolve the particularized susceptibility requirement . . . [Defendant] has contracted COVID-19, recovered from it, and has now been fully vaccinated so the risk from COVID-19 must be considered slight.").

Second, Petitioner does not meet her burden to show her obesity, asthma, depression, and chronic back pain place her at a particularized susceptibility to COVID-19 or otherwise constitute extraordinary and compelling conditions. It is true that obesity, asthma, and depression may

---

[1] *See also Benefits of Getting A COVID-19 Vaccine*, Ctrs. for Disease Control & Prevention (Sept. 22, 2023), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html.

7

increase one's risk of severe illness from COVID-19.[2] Yet Petitioner does not show her Body Mass Index ("BMI") meets the Centers for Disease Control and Prevention's definition of "obesity," which is "30 kg/m$^2$ or higher," and "40 kg/m$^2$ or higher" for "severe obesity."[3] Petitioner has taken courses addressing "Health," "Health & Wellness Lifespan," and "Aging Well," and has the opportunity to take a "Health & Nutrition" course, all of which can likely help her mitigate her obesity and its health effects. Mot. Ex. 2 at 10. Additionally, Petitioner has received treatment for her asthma and has been prescribed an inhaler. Resp. Opp'n Ex. D at 4, ECF No. 177. Petitioner also has received treatment for depression, including prescription medication and attending a psychology services treatment group. *See id.*; Mot. Ex. 2 at 13. Finally, Petitioner provides no evidence her chronic back pain has any bearing on her susceptibility to COVID-19 or that this condition itself constitutes extraordinary and compelling circumstances warranting release. *Cf. United States v. Wills*, 541 F. Supp. 3d 1185, 1189 (D. Or. 2021) (denying compassionate release where defendant was vaccinated but claimed his obesity, high cholesterol, high blood pressure, neuropathy, and chronic back pain placed him at risk of serious illness from COVID-19); *United States v. Alonzo*, 516 F. Supp. 3d 623, 627–28 (E.D. Tex. 2021) (denying compassionate release where defendant claimed he suffered "from anxiety and panic attacks, high blood pressure, chronic back pain, and gastritis/acid reflux, which place him at a greater risk to contract COVID-19").

As of April 19, 2022, Petitioner is classified as a "Care Level []1" inmate, meaning she is "Healthy or [needs] Simple Chronic Care." Mot. Ex. 2 at 4, 9. Despite her claim that FPC Alderson has no doctor on staff, she has received regular health treatment and medication for her various

---

[2] *See People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention (May 11, 2023), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html; *Obesity, Race/Ethnicity, and COVID-19*, Ctrs. for Disease Control & Prevention (Oct 17, 2023), https://www.cdc.gov/obesity/data/obesity-and-covid-19.html.
[3] *People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention (May 11, 2023), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

8

health conditions. *See* Mot. Ex. 2; Resp. Opp'n Ex. D. The evidence shows Petitioner's medical conditions are "chronic conditions that can be managed in prison[, which] are not a sufficient basis for compassionate release." *Smith*, 2021 WL 3641463, at *3 (quoting *United States v. Ayon-Nunez*, No. 1:16-cr-130, 2020 WL 704785, at *2–3 (E.D. Cal. Feb. 12, 2020)).

For these reasons, Petitioner fails to show she faces a particularized susceptibility to COVID-19 or that her medical conditions otherwise constitute extraordinary and compelling circumstances warranting compassionate release.

        b.     <u>Particularized risk of contracting COVID-19 at FPC Alderson</u>

Further, Petitioner does not show a particularized risk of contracting the disease at FPC Alderson because she shows no "evidence of an actual outbreak . . . [but] simply the mere possibility of COVID-19 spreading to [her] camp" or within her camp. *United States v. Little*, No. 1:10-cr-135, 2020 WL 3442173, at *2 (E.D. Va. June 23, 2020). Petitioner argues that 300 people contracted the virus at FPC Alderson since the beginning of the COVID-19 pandemic, and five staff members were infected at the time of filing. Pet'r's Suppl. Mot. at 9. Although Petitioner disparages these figures as underestimates resulting from low testing rates, she provides no affirmative evidence of infections or a particularized risk of outbreak at FPC Alderson. *See* Pet'r's Suppl. Mot. at 9–10. Her argument that BOP facilities generally experience higher rates of COVID-19 infection that tend to increase along with infections in the general public does not demonstrate a particularized susceptibility to infection at FPC Alderson. *See id.* at 8–9; *Little*, 2020 WL 3442173, at *2 (rejecting evidence of "BOP nationwide trends in cases as evidence of the particularized risk" defendant faced).

As of October 11, 2023, there is only one "Open Case[]" of COVID-19 at FPC Alderson and the camp is operating at "Operational Level" 1. *Inmate COVID-19 Data*, Fed. Bureau

9

Prisons, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp; *BOP COVID-19 Statistics*, Fed. Bureau Prisons, https://www.bop.gov/coronavirus/covid19_statistics.html. The Court sentenced Petitioner to 78 months in prison on November 2, 2021, well after the COVID-19 pandemic began. The Court understood the challenges of the pandemic and BOP's efforts to mitigate their effects on prisoners. Petitioner does not demonstrate extraordinary and compelling circumstances arising from the COVID-19 pandemic or BOP's measures to mitigate it.

Petitioner's circumstances related to COVID-19 and her conditions of confinement are not extraordinary and compelling, meaning they do not warrant compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i).

### ii. Petitioner's family circumstances

Petitioner argues her family circumstances constitute extraordinary and compelling reasons warranting compassionate release. Petitioner avers her stepfather acted as a major financial provider for her mother and the primary financial provider for her minor daughter until his decline in health and recent death during Petitioner's incarceration. Pet'r's Suppl. Mot. at 13; Pet'r's Reply at 5. Petitioner also states her mother financially assisted Petitioner's minor daughter through social security funds, but she can no longer do so after the loss of her husband (Petitioner's stepfather) and her own deteriorating health. Pet'r's Reply at 6. Petitioner claims her minor daughter's father is under a child support order but fails to consistently pay support payments and that Petitioner has been "unable to pursue all legal avenues to enforce the order." *Id.* Petitioner's minor daughter is in physical custody of Petitioner's adult daughter, who also cares for a disabled son. Pet'r's Suppl. Mot. at 13; Pet'r's Reply at 5. Petitioner argues release would allow her to financially support her family, and that there are no definite criteria for extraordinary and compelling family circumstances. *See* Pet'r's Suppl. Mot. at 14–15; Pet'r's Reply at 6.

The Government contends that Petitioner's family circumstances do not satisfy the United States Sentencing Commission's policy statement under U.S.S.G. § 1B1.13 because Petitioner does not claim "[t]he death or incapacitation of the caregiver of [her] minor child" or "incapacitation of [her] spouse." U.S.S.G. § 1B1.13 (2021); Resp. Opp'n at 16–17. Although the Government acknowledges the policy statement is not binding, it further argues Petitioner's claim of financial hardship on her family is not extraordinary or compelling, but rather a common consequence of incarceration. *See* Resp. Opp'n at 16–19.

The Sentencing Commission explains in the Application Notes to § 1B1.13 that extraordinary and compelling reasons exist regarding a defendant's family circumstances in the event of:

> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

U.S.S.G. § 1B1.13, n. 1(C)(i)–(ii). As explained above, this Guideline "does not apply to defendant-filed motions under § 3582(c)(1)(A)" and is advisory only. *McCoy*, 981 F.3d at 282–83. The Court may consider "*any* extraordinary and compelling reason for release that a defendant might raise." *Id.* at 284 (citation omitted). Nevertheless, § 1B1.13 "remains helpful guidance even when motions are filed by defendants." *Id.* at 282 n.7.

It is undisputed that Petitioner's circumstances do not satisfy the policy statement set forth in § 1B1.13. Petitioner's adult daughter, not Petitioner's stepfather, has been the caretaker of Petitioner's minor daughter, and Petitioner does not claim death of a spouse. Pet'r's Suppl. Mot. at 13; Pet'r's Reply at 5. Petitioner also does not claim that her mother cannot care for herself or that her adult daughter cannot care for Petitioner's minor daughter without Petitioner's assistance.

Although Petitioner's assistance would likely be helpful, that alone is not sufficient to warrant compassionate release. "[F]amily hardship is normally not a cognizable 'extraordinary and compelling reason' for release because it nearly always attends a carceral sentence." *United States v. Sarratt*, No. 3:01-cr-16-GCM, 2022 WL 214132, at *3 (W.D.N.C. Jan. 24, 2022), *reconsideration denied*, No. 3:31-cr-16-GCM, 2022 WL 860451, *aff'd*, No. 22-6335, 2022 WL 3699667 (4th Cir. Aug 26, 2022).

The cases Petitioner cites in favor of release are not persuasive because they involve greater, more specific showings of hardship and need for the defendants' assistance. In *United States v. Thompson*, No. 3:17-cr-170-CHB, 2021 WL 2418573 (W.D. Ky. June 14, 2021), the defendant's ailing mother was the "primary caregiver to Defendant's minor children and Defendant's infant grandchild," and all three children had developmental disabilities requiring extensive care and supervision. *Thompson*, 2021 WL 2418573, at *4. The defendant also filed medical records documenting her mother's deteriorating health and a letter from her mother explaining the need for defendant's assistance. *See id.* at *4. The court found the defendant's circumstances extraordinary and compelling for those reasons. *See id.* at *5. In *United States v. Hansen*, No. 17-cr-50062, 2020 WL 2219068 (N.D. Ill. May 7, 2020), the court released the defendant so he could care for his wife suffering from a serious liver disease that impaired her immune system and prevented her from working. *Hansen*, 2020 WL 2219068, at *2. The defendant's wife submitted an affidavit swearing that the defendant would be her primary caregiver. *See id.* Finally, in *United States v. Walker*, No. 1:11-cr-270, 2019 WL 5268752 (N.D. Ohio Oct. 17, 2019), the Court granted release in part so the defendant could care for his terminally ill mother. *Walker*, 2019 WL 5268752, at *2–*3. The defendant provided "undisputed evidence" that his mother suffered from Acute Myeloid Leukemia and required non-traditional treatment,

and he demonstrated he could contribute to his mother's medical costs. *See id.*

In contrast to these cases, Petitioner has not clearly demonstrated her family needs her to take care of them. Petitioner has provided no letters, affidavits, medical records, or financial records demonstrating her family's acute hardship. Although Petitioner's family members may find it difficult to care for themselves and her minor daughter, Petitioner has not shown they cannot do so without her assistance.

For these reasons, Petitioner's family circumstances do not constitute extraordinary and compelling circumstances warranting compassionate release.

### iii. Petitioner's Arguments under the 18 U.S.C. § 3553(a) Factors

Finally, Petitioner argues the 18 U.S.C. § 3553(a) factors weigh in favor of compassionate release. Petitioner argues she has "done what she can to make amends for her actions" and accepted responsibility for her offense. Pet'r's Suppl. Mot. at 15. Petitioner works in plumbing at FPC Alderson. *Id.* At the time of filing, Petitioner had completed a drug education program, was awaiting drug treatment, and was completing her General Education Diploma. *Id.* Petitioner has participated in several rehabilitation programs and, at the time of filing, had no disciplinary history. *Id.* at 15–16. Petitioner asserts that if released, she would move in with her mother and children, care for her minor daughter and other household members, and pursue employment. *Id.* at 16. Further, Petitioner claims there is no consistent medical care at FPC Alderson and that she would receive better physical and mental health treatment if released and. *Id.* at 16; Pet'r's Reply at 8.

The Government argues that even if extraordinary and compelling circumstances exist, the § 3553(a) factors do not support release. The Government contends Petitioner has served only a short amount of time in prison for her offense, and release would create an unjust disparity relative to her co-defendants' 115-month and 57-month sentences. Resp. Opp'n at 21, 23. The Government

also argues her leading role in fraudulently obtaining benefits intended for people suffering from the COVID-19 pandemic is serious, as evidenced by Congress "enhancing by 50% the penalty that is otherwise available for a charge of mail fraud." *Id.* The Government also cites Petitioner's criminal history and argues it became "increasingly serious over time." *Id.* at 21–22. Finally, the Government argues Petitioner's rehabilitation efforts "do not outweigh the seriousness of her offense" and are alone insufficient to warrant a reduction in sentence. *Id.* 23–24.

Petitioner's failure to show extraordinary and compelling circumstances renders her arguments under the § 3553(a) analysis moot, as extraordinary and compelling circumstances are required to warrant release under § 3582. 18 U.S.C. § 3582(c)(1)(A)(i). As explained above, Petitioner is receiving treatment for her medical conditions while in prison. Additionally, rehabilitation itself is not an extraordinary or compelling circumstance warranting compassionate release. 28 U.S.C. § 944(t); *see United States v. Redd*, 444 F. Supp. 3d 717, 722 (E.D. Va. 2020). Although rehabilitation may be considered with other factors to determine whether extraordinary and compelling circumstances exist, the Court finds there are none, and Petitioner has simply explained she is doing "the things that prisoners are supposed to do" while in prison. *United States v. Wilkes*, No. 2:03cr161, 2022 WL 1102630, at *7 (E.D. Va. April 13, 2022) (quoting *United States v. Logan*, 532 F. Supp. 3d 725, 735 (D. Minn. 2021)). The Court commends Petitioner for her employment and rehabilitation efforts while in prison and for her lack of disciplinary history, but these do not constitute extraordinary and compelling circumstances warranting release.

The Court further notes that Petitioner's role as a leader in the underlying offense is serious. Petitioner committed mail fraud over a period of several months by using the personal identifying information of inmates in Virginia Department of Corrections facilities to apply for unemployment benefits authorized by the Coronavirus Aid, Relief, and Economic Security ("CARES") Act.

Statement of Facts ¶ 10–17, ECF No. 65. Petitioner took advantage of a national emergency that rendered countless people around the country unemployed and in need of unemployment benefits to survive. *See* Sentencing Hr'g Tr. at 47, ECF No. 173.

Additionally, Petitioner was attributed with a criminal history category of II at the time of sentencing. Presentence Investig. Report ¶ 63, ECF No. 169. Petitioner was convicted of drug distribution in April 2019 and has several prior arrests for offenses such as disorderly conduct, discharge of a firearm, assault, and false report about commission of a crime. *Id.* ¶ 42. Petitioner's conduct in the underlying offense and her criminal history weigh against her request for compassionate release. In sum, Petitioner has not shown that extraordinary and compelling circumstances exist to warrant release under 18 U.S.C. § 3582(c)(1)(A)(i).

## IV. CONCLUSION

For the foregoing reasons, Petitioner has not shown extraordinary and compelling circumstances warranting compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Thus, Petitioner's Supplemental Motion for Compassionate Release, ECF No. 170, is **DENIED**, and Petitioner's *pro se* Motion, ECF No. 167, is **DISMISSED** as moot.

The Clerk is **DIRECTED** to provide a copy of this Order to the Petitioner and the United States Attorney.

**IT IS SO ORDERED.**

Norfolk, Virginia
October 24, 2023

/s/
Raymond A. Jackson
United States District Judge